UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOSHUA HAYWORTH, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Nos.: 3:18-cv-430-TAV-HBG |
| | ) | 3:14-cr-017-TAV-HBG-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION</u>**

Petitioner Joshua Hayworth has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 3; Case No. 3:14-cr-17 ("Crim. Case"), Doc. 181].[1] The government has responded in opposition [Doc. 11]. Also before the Court are petitioner's motions in which he requests: (1) an extension of time to file his § 2255 motion [Docs. 1, 2; Crim. Case, Docs. 179, 180]; (2) to supplement or amend his § 2255 motion [Docs. 13, 14, 16, 17, 19, 22]; (3) appointment of counsel [Docs. 16, 17, 19, 22, 23]; (4) leave to file medical records under seal [Doc. 15]; (5) discovery [Doc. 20]; (6) an evidentiary hearing [Doc. 23]; (7) to compel judgment on his § 2255 motion [Docs. 24, 25]; and (8) approval of his release plan [Doc. 27].

For the reasons explained below, the Court will **DENY** petitioner's motions for an extension of time to file his § 2255 motion [Docs. 1, 2; Crim. Case, Docs. 179, 180] as moot. The Court will **DENY** petitioner's requests for appointment of counsel [Docs. 16,

---

[1] All docket citations refer to the civil case unless otherwise indicated.

17, 19, 22, 23], leave to file medical records under seal [Doc. 15], discovery [Doc. 20], and an evidentiary hearing [Doc. 23]. The Court will **GRANT IN PART** and **DENY IN PART** petitioner's requests to supplement his initial § 2255 motion [Docs. 13, 14, 16, 17, 19, 22]. Specifically, petitioner's requests to supplement will be **GRANTED IN PART** only to the extent that the Court will consider petitioner's supplemental *United States v. Davis*, 139 S. Ct. 2319 (2019) claim as timely. Nevertheless, because petitioner has not shown that he is entitled to relief, the Court will **DENY** petitioner's § 2255 motion [Doc. 3; Crim. Case, Doc. 181]. In light of this ruling on petitioner's § 2255 motion, the Court will **DENY** petitioner's motions to compel judgment [Docs. 24, 25] and petitioner's motion to approve release plan [Doc. 27] as moot.

## I. Background

In February 2014, petitioner was indicted on charges of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951, 2 (Count 1) and carjacking, in violation of 18 U.S.C. § 2119 (Count 2) [Crim. Case, Doc. 9]. In March 2014, petitioner's appointed counsel filed a sealed motion to refer petitioner to a proper facility for a mental health evaluation [Crim. Case, Doc. 27]. Counsel stated that his interactions with petitioner were "marred by the psychotic, paranoid, and delusional behavior of the [petitioner] such that counsel cannot adequately prepare this case for trial" [*Id*. at 1]. Counsel further noted that petitioner had previously been treated for bipolar disorder, schizophrenia, and other mental issues, and indicated that petitioner should be returned to a medication regimen so that he could knowingly participate in preparation of his defense [*Id*.].

2

A hearing on this motion was held before United States Magistrate Judge H. Bruce Guyton [Crim. Case, Docs. 28, 143]. At the hearing, counsel informed the Court that the medical staff at the Blount County Jail, where petitioner was being held, had forcefully administered Haldol which "is one of the most powerful antipsychotics that exist," and which reportedly caused some success in treating petitioner's behavioral issues [Crim. Case, Doc. 143, p. 5]. Nevertheless, counsel stated that his communications with petitioner were still insufficient [*Id*.]. Defendant, speaking on his own behalf, indicated that he did not want a mental health evaluation, and instead, wanted a detention hearing [*Id*. at 15]. After the hearing, Judge Guyton granted defense counsel's motion for a competency evaluation and ordered that petitioner be detained for a psychiatric evaluation [Crim. Case, Doc. 29]. Judge Guyton also ordered that petitioner be given any necessary medications if determined appropriate by the medical staff at the facility [*Id*. at 3].

In June 2014, the Bureau of Prisons ("BOP") submitted a Forensic Report from a clinical psychologist, who opined that petitioner was suffering from a mental disease that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him and would substantially impair his ability to properly assist counsel in a defense [Crim. Case, Doc. 32]. Thereafter, Judge Guyton conducted a competency hearing [Crim. Case, Docs. 34, 146]. At the hearing, the parties stipulated to the contents of the Forensic Report [Crim. Case, Doc. 146, pp. 2–3]. Judge Guyton found by a preponderance of the evidence that petitioner had a mental disease that interfered with his ability to understand the proceedings against him or to assist

3

in his defense at that time, and thus, found that he was not then competent to proceed to trial [*Id*. at 5]. Judge Guyton accordingly ordered that petitioner be committed to the custody of the Attorney General for treatment at a federal medical facility and directed that petitioner be given any necessary medications as deemed appropriate by the medical staff at the treating facility [Crim. Case, Doc. 35].

In November 2014, Judge Guyton held a status conference [Crim. Case, Docs. 57, 144]. Petitioner was not present at the status conference [Crim. Case, Doc. 144, p. 3]. Defense counsel stated that he had spoken to petitioner's caseworker over the telephone on two occasions, and stated that his impression was that they had not "figured out what to make of Mr. Hayworth in the time they've had him . . . they're wrestling with Mr. Hayworth's condition" [*Id*.]. Judge Guyton indicated that he intended to request a status update from the facility on petitioner's treatment [*Id*. at 4].

In January 2015, the BOP sent a letter to Judge Guyton setting forth that it was the opinion of the clinical staff that petitioner was mentally competent to stand trial at that time [Crim. Case, Doc. 58, p. 1]. The BOP attached a new Forensic Report, signed by both a psychology intern and a board-certified psychologist, opining that regular attendance at competency restoration groups appeared to have benefited petitioner, and he was then competent to stand trial [*Id*. at 14]. The Forensic Report did caution that petitioner "may require reminders about how legal terms and processes apply to his case, as the need arises" and "will require counsel to regularly inform and remind him of the nature and significance of the legal proceedings relevant to him" [*Id*.].

4

After receiving this Forensic Report, in March 2015, Judge Guyton held another competency hearing [Crim. Case, Docs. 65, 148].[2]  At the hearing, defense counsel stated that, after reviewing the reports and seeking outside consultation from clinicians in Knoxville, the consensus was that an individual could look at these results and conclude either that petitioner was or was not competent, and "it might just be a continuo[u]s ping pong match, but ultimately it appears it is in Mr. Hayworth's best interest to go forward" [Crim. Case, Doc. 148, p. 3].  Defense counsel did note that the Forensic Report emphasized his ability to communicate with petitioner, and defense counsel reserved the right to raise any issues with his communication with petitioner to the Court, if the need arose [Id.].  Based on no objections to the Forensic Report, Judge Guyton found petitioner competent to proceed to trial [Id. at 4; Crim. Case, Doc. 66].

Petitioner then proceeded to trial [Crim. Case, Docs. 150–152].  The trial testimony showed that, on the night of January 30, 2014, an individual robbed the Burger King in Lenoir City [Crim. Case, Doc. 150, pp. 50, 62].  Timothy Chudley, an employee at the Burger King, asked the manager to unlock the back door so that he could take out the trash [Id. at 51].  Thereafter, the robber entered the Burger King, and began yelling for everyone to get on the ground, and pulled one employee, who was on a ladder cleaning, to the ground, pointing a gun[3] at her [Id. at 54, 73–74].  The robber had his face covered [Id. at 55, 65,

---

[2] This hearing was initially scheduled for January 20, 2015, but, at that hearing, defense counsel requested additional time to confer with petitioner, and the Court continued the hearing [Crim. Case, Docs. 59, 60, 147].

[3] Later testimony indicated that the "gun" was actually a $CO_2$ powered air gun replica [Crim. Case, Doc. 150, p. 108].

69].  The robber then entered the office where the manager and two cashiers were counting money from the cash registers, pointed the "gun," and demanded that the employees open the safe and dump the money into a bag [*Id*. at 53, 55, 63, 69].  Witnesses believed that the robber got into an altercation with employee Chudley, because the robber hit Chudley over the head with the "gun" [*Id*. at 55–56].

Evidence, however, showed that Chudley had been involved in planning the robbery with petitioner.  Chudley testified that he and petitioner planned out the robbery of the Burger King at which Chudley worked, because petitioner needed money [Crim. Case, Doc. 151, p. 36].  Chudley stated that he and petitioner came up with this plan together [*Id*. at 41].  Chudley further testified that he had instructed petitioner to hit him on the head with the gun so that it would look like Chudley was not involved in the robbery [*Id*. at 42].  Chudley stated that petitioner drove his sister's Nissan Maxima to the Burger King the night of the robbery [*Id*. at 51].  Several text messages between a phone used by petitioner and Chudley indicated that the two had discussed robbing the Burger King on January 30, 2014 [*Id*. at 32–34].

The testimony established that, immediately after the Burger King robbery was reported, petitioner's sister's Nissan Maxima was seen driving at a high rate of speed and crashing [Crim. Case, Doc. 150, pp. 87–88].  When police approached the crash scene, they found the car with doors open, money in the front seat and spilling out of the car, several possessions belonging to petitioner, but no occupant in the vehicle [*Id*. at 88–89, 97–107].

6

Several days later, on February 3, 2014, police had learned that petitioner was believed to be driving a white Jeep Wrangler [Crim. Case, Doc. 151, p. 92]. That day, Investigator Todd Gilreath of the Federal Bureau of Investigation ("FBI") spotted the vehicle driving in Knoxville [*Id*. at 91–93]. Investigator Gilreath began to follow the vehicle and, at one point, was able to pull up beside the vehicle and saw that petitioner was the driver [*Id*. at 95–96]. Investigator Gilreath called another FBI agent who was working the case, and, when petitioner spotted the other investigator's vehicle, he "floored it" [*Id*. at 97]. Investigator Gilreath lost the vehicle at one point during the chase, but, approximately 25 minutes later, the Knox County Sheriff's Office reported that it had recovered the Jeep [*Id*. at 98, 100]. Police continued searching for petitioner in the area the Jeep was located, and approximately 30 more minutes later, a report went out that a 2013 Ford Escape had been carjacked [*Id*. at 101–02].

Nearby, Melissa McGuire had just returned from work, and had walked out to the end of her driveway to talk to her neighbor, Sarah Gulley, who was nine months pregnant, about police activity that had been occurring in the neighborhood [*Id*. at 121–22, 153]. Gulley also shared with McGuire that she had just returned from a doctor visit and learned that she was scheduled to be induced into labor with her first child later that week [*Id*. at 121–22, 151]. While they were talking, petitioner ran up to the two women, screaming at them to give him their keys [*Id*. at 122, 153]. McGuire could not locate her keys and yelled for Gulley to run, trying to step between petitioner and Gulley [*Id*. at 122–23, 153]. However, petitioner pushed McGuire out of the way, and, during that scuffle, Gulley had

7

fallen directly onto her stomach on the pavement, while trying to flee [*Id.* at 123, 154].

Petitioner then wrestled Gulley for her keys, while McGuire pleaded with him not to hurt

Gulley [*Id.* at 123, 154]. Petitioner ultimately obtained Gulley's keys and located her

vehicle in her garage, at which point Gulley pleaded with petitioner to let her dog out of

the car before he took it [*Id.* at 124, 156]. Petitioner did let the dog out of the car before

driving off [*Id.*]. Gulley was taken to the hospital, fearing she had lost her baby, because

she could no longer feel the baby moving [*Id.* at 127, 156–57]. Fortunately, Gulley's son

was born healthy [*Id.* at 160].

Investigator Gilreath began heading towards the location of the carjacking once he

heard the report [*Id.* at 104]. On his way, he encountered the stolen Escape and made a

U-turn to begin following it, but the Escape wrecked a short distance later, over a hill

[*Id.* at 104–05]. The driver of the Escape had fled the scene [*Id.* at 105]. At this point,

petitioner was spotted attempting to break into a family's home, but, when chased away,

was seen entering an abandoned home in the neighborhood [*Id.* at 142]. Police canines

tracked petitioner to the abandoned home [*Id.* at 109, 147–48]. At the abandoned home,

officers announced that they would be letting the canines in, and ultimately did let the

canines in, which alerted to the couch in the living room [*Id.* at 148]. Officers also spotted

an elbow sticking out from under the couch [*Id.*]. Officers flipped the couch over and took

petitioner into custody [*Id.*].

On the second day of trial, the clerk received communication from the defendant

which the Court interpreted as a request for appointment of new counsel, and the Court

determined that it would be advisable to hear separately and in-camera from petitioner and his counsel [*Id.* at 56]. The letter, which was placed on the record, expressed concern that counsel was performing ineffectively [Crim. Case, Doc. 79]. Petitioner stated that he had concerns about counsel's failure to cross-examine witnesses or object when requested [*Id.*]. Petitioner also stated that his counsel had been communicating with his family to ask them to convince petitioner to plead guilty [*Id.*].

Counsel responded that it was difficult to respond to the letter without getting into the depths of trial strategy but stated that there was a strategy at play [Crim. Case, Doc. 151, pp. 59–60]. Counsel stated that he had tried to explain his strategy to petitioner and had encountered some difficulties in communication with petitioner [*Id.* at 60]. Counsel stated that the lack of cross-examination is sometimes a strategic move, and he had attempted to communicate with petitioner his reasons for that strategy [*Id.*]. In light of counsel's statements, the Court took a break and allowed counsel to discuss trial strategy with petitioner again [*Id.* at 62]. The Court remained in recess for 25 minutes while counsel discussed trial strategy with petitioner [*Id.* at 65]. The Court then inquired whether counsel had been able to communication his trial strategy to petitioner and counsel responded that he was able to communicate, and, while there were certain disagreements, there was "a pretty clear discussion of where" he "intend[ed] to go with this" [*Id.* at 66]. The Court asked petitioner whether he had anything else to add, and he replied in the negative [*Id.*].

After taking a lunch break, the Court resumed and inquired whether any further discussions had occurred regarding petitioner's motion for appointment of new counsel

[*Id*. at 68–69]. After a brief discussion with petitioner, counsel stated that petitioner wished to stand on his motion, and counsel stated that he had nothing further to add [*Id*. at 69]. The Court ultimately found that petitioner had not established good cause for the appointment of new counsel [*Id*. at 70]. The Court noted that, given the conversation it had with petitioner and his counsel under seal, it did not find that any rift between petitioner and his counsel was so great that it prevented an adequate defense [*Id*.].

On the final day of trial, petitioner elected to testify on his own behalf [Crim. Case, Doc. 152, p. 9]. Petitioner testified that he was not at the Burger King on January 30, 2014 [*Id*. at 11]. He also stated that he was not in his sister's car that night [*Id*.]. He denied any contact with Chudley about robbing the Burger King [*Id*. at 12]. He further denied taking a car from McGuire and/or Gulley [*Id*. at 15]. When given the opportunity to say anything else about the testimony that had been presented, petitioner stated that "they said that I done this stuff and I'm saying that I didn't" [*Id*. at 16]. The jury ultimately found petitioner guilty as to both counts of the indictment [Crim. Case, Doc. 87].

After the jury's verdict, the probation office prepared a presentence investigation report ("PSR") that was revised numerous times [Crim. Case, Docs. 100, 109, 112, 121]. In his objections to the initial PSR, of relevance, petitioner argued that the PSR incorrectly applied a five-level enhancement on the ground that a "firearm" was brandished during the offense [Crim. Case, Doc. 105, p. 1]. Petitioner argued that U.S.S.G. § 1B1.1 defines a "firearm" and notes that a pellet gun, such as that brandished by petitioner is "a dangerous weapon but not a firearm" [*Id*.]. Accordingly, petitioner argued that a three-level

10

enhancement for brandishing a dangerous weapon should apply, rather than the five-level enhancement for brandishing a firearm [*Id.* at 2–3]. Petitioner also argued that the PSR incorrectly labeled him a career offender pursuant to U.S.S.G. § 4B1.1, arguing that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), striking down the residual clause of the Armed Career Criminal Act as unconstitutionally vague should likewise apply to the career offender guideline [*Id.* at 3]. Petitioner argued that one of his two predicate "crimes of violence"—felony escape—only qualified as a "crime of violence" under the residual clause of the Guidelines and therefore should not be used as a basis for classifying him as a career offender [*Id.* at 3–4].

The probation office agreed with petitioner's objection to the firearm enhancement, and amended this enhancement from the five-level enhancement for brandishing a firearm to the three-level enhancement for brandishing a dangerous weapon [Crim. Case, Doc. 108, pp. 1–2; Doc. 109, ¶ 25]. However, the probation office contended that escape qualifies as a crime of violence under the Sentencing Guidelines [Crim. Case, Doc. 108, p. 3].

Thereafter, the probation office concluded that it had erroneously applied the three-level enhancement for brandishing a dangerous weapon in the second revised PSR [Crim. Case, Doc. 111]. Instead, the probation office concluded that a four-level enhancement should apply because the dangerous weapon was "otherwise used" [*Id.*]. The probation office issued a third revised PSR, in which a four-level enhancement was applied under U.S.S.G. § 2B3.1(b)(2)(D), because a "dangerous weapon was otherwise used" [Crim. Case, Doc. 112, ¶ 25].

11

Petitioner then filed an objection to the probation office's application of a four-level enhancement in Paragraph 25 of the third revised PSR [Crim. Case, Doc. 118]. Petitioner argued that the phrase "otherwise used" was unconstitutionally vague and based on conduct that is implicit in the "brandished" enhancement [*Id.*]. The probation office concluded that the four-level enhancement was properly applied [Crim. Case, Doc. 120, p. 1]. However, the probation office did prepare a fourth amended PSR, making minor changes to factual matters [*Id.* at 2; Crim. Case, Doc. 121].

The fourth revised PSR ultimately calculated petitioner's combined adjusted offense level as 28, but his total offense level as 32, based on his status as a career offender [Crim. Case, Doc. 121, ¶¶ 40–41, 43]. The fourth revised PSR also calculated petitioner's criminal history score as IV, but enhanced the score to VI, based on petitioner's status as a career offender [*Id.*, ¶¶ 56–57]. Based on a total offense level of 32 and a criminal history category of VI, the fourth revised PSR calculated petitioner's guideline range as 210 to 262 months, however, because the statutory maximum for Count 1 was 20 years, the effective guideline range was 210 to 240 months [*Id.*, ¶ 80].

The government filed a motion for an upward departure and upward variance, requesting a 240-month term of imprisonment, regardless of the application of the career offender guidelines [Crim. Case, Doc. 115, p. 1]. The government noted that its policy was not to pursue career offender enhancements for defendants whose prior convictions only qualify as crimes of violence under the Guidelines' residual clause [*Id.* at 5]. Nevertheless, the government cited petitioner's egregious conduct in this case and his

severe criminal history in support of its request for an upward departure or variance [*Id*. at 1].

At sentencing, defense counsel argued that the "otherwise used" language in U.S.S.G. § 2B3.1(b)(2)(D) was vague and left the parties to apply their individual judgment as to what "otherwise used" means [Crim. Case, Doc. 149, p. 6]. Defense counsel argued that there was an implicit threat when brandishing a gun, and whether a threat was actually vocalized should not change the analysis [*Id*.]. Counsel extensively argued that petitioner's actions in hitting codefendant Timothy Chudley over the head with the weapon should not rise to the level of "otherwise used." [*Id*. at 6–8]. Counsel concluded that the "otherwise used" language was "extremely vague" and "subject to an individual's interpretation [*Id*. at 8]. Counsel also reiterated petitioner's argument that he should not be deemed a career offender in light of *Johnson* [*Id*. at 12–14]. In response to petitioner's career offender argument, the government asked the Court not to find that petitioner was a career offender, based on its policy not to pursue qualifying convictions under the Guidelines' residual clause [*Id*. at 24–25].

In ruling on petitioner's objection to the four-level enhancement under U.S.S.G. § 2B3.1(b)(2), the Court noted that the application notes defined "otherwise used" in the context of a dangerous weapon as conduct that "did not amount to the discharge of a firearm, but was more than brandishing, displaying or possessing a firearm or other dangerous weapon" [*Id*. at 27–28]. The Court also noted that the Sixth Circuit had held that pointing a firearm at an individual and making demands from that person "is more than

merely displaying a firearm with the intent to intimidate because by doing so a defendant communicates the implicit threat that if the individual does not comply with the defendant's demands the defendant will shoot the individual," and thus, the "otherwise used" enhancement was properly applied in such situations [*Id*. at 28]. The Court stated that, in this case, petitioner pointed a dangerous weapon at one victim while demanding that she get down from the ladder upon which she was standing and then pointed the dangerous weapon at a second victim, threw a bag at him, and ordered him to fill the bag up with money [*Id*. at 28–29]. Further, petitioner made his threats to the victims more realistic by hitting his codefendant with the dangerous weapon [*Id*. at 29]. Thus, the Court concluded that petitioner did more than display or brandish the dangerous weapon, and instead, actively used it to threaten the victims with bodily harm if they did not comply with petitioner's demands [*Id*.]. Moreover, as to petitioner's argument that the "otherwise used" enhancement was unconstitutionally vague, the Court rejected that argument based on the Sixth Circuit's holding that the guidelines are not susceptible to a vagueness attack [*Id*.]. The Court thus overruled petitioner's objection to the four-level enhancement [*Id*.].

In light of the government's concession on the career offender objection, the Court granted petitioner's objection in part and declined to impose the career offender enhancement [*Id*. at 38]. The Court thus calculated petitioner's total offense level as 28 and criminal history category as IV, which resulted in an advisory guideline range of 110 to 137 months' imprisonment [*Id*. at 28–39].

14

Thereafter, the government reiterated its argument for an upward variance or upward departure to a total sentence of 240 months [*Id.* at 39–45]. Defense counsel responded in opposition [*Id.* at 45–52]. Specifically, defense counsel contended that petitioner's conduct was sufficiently encompassed by the guideline calculations [*Id.* at 47]. Defense counsel also argued that petitioner's criminal history was not underrepresented [*Id.* at 48–49]. Defense counsel further pointed out that petitioner had suffered with mental issues, and acted impulsively without medication, but "does better" on medication [*Id.* at 49–50].

In addressing the government's motion, the Court stated that it "ha[d] some pause in granting an upward departure based upon underrepresentation of the defendant's criminal history" [*Id.* at 72]. The Court ultimately declined to grant an upward departure, and, instead found "it more appropriate to assess the government's motion from a variance request" [*Id.* at 73]. The Court found it appropriate to grant the government's request for an upward variance, noting that petitioner had displayed "a callous disregard for persons in particular as well as property as a result of the defendant's quite serious offense conduct in this case" [*Id.* at 75]. The Court also pointed to the "extremely violent" nature of the instant offense and petitioner's "lengthy and violent criminal history" in concluding that an upward variance was necessary to promote respect for the law, provide just punishment, and afford adequate deterrence [*Id.* at 75–76]. The Court ultimately sentenced petitioner to a total term of 200 months' imprisonment, consisting of 200 months as to Count 1 and 180 months as to Count 2, to run concurrently [*Id.* at 80; Crim. Case, Doc. 123].

15

Petitioner appealed his carjacking conviction and sentence [Crim. Case, Docs. 126, 163]. Specifically, petitioner argued that (1) the trial evidence was insufficient to convict him of carjacking; (2) the district court erroneously denied his motion for judgment of acquittal, based on an argument that the "passions, prejudices, or sympathies" or the jury were overwhelming; and (3) the Court erred in the length of the sentence imposed [Crim. Case, Doc. 163, pp. 5–6]. The Sixth Circuit first rejected petitioner's two challenges to his carjacking conviction [*Id.* at 8–9]. Further, the Sixth Circuit affirmed this Court's grant of an upward variance in petitioner's sentence, noting that the Court had provided a thorough justification citing the "violent history and unrepentant nature of" petitioner [*Id.* at 11].

The Sixth Circuit issued its mandate on March 31, 2017 [Crim. Case, Doc. 168]. Thereafter, petitioner filed a petition for a writ of certiorari with the United States Supreme Court [Crim. Case, Doc. 172]. On October 2, 2017, the Supreme Court denied petitioner's petition for a writ of certiorari [Crim. Case, Doc. 173].

## II.    Legal Standard

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which

16

had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Claims of ineffective assistance of counsel are cognizable under § 2255. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003). A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, he must identify specific acts or omissions to prove that counsel's performance was deficient, and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, a petitioner must also establish "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no

effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because a petitioner "must satisfy *both* prongs of *Strickland* to obtain relief on an ineffectiveness claim, the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc); *accord Strickland*, 466 U.S. at 697.

## III. Analysis

### A. Preliminary Motions

#### 1. Appointment of Counsel

Throughout his filings, and particularly with regard to his supplemental *Davis* claim, petitioner repeatedly requests that counsel be appointed to represent him in his § 2255 proceeding [Doc. 15, p. 1; Doc. 17, p. 1; Doc. 19, p. 6; Doc. 22, p. 1; Doc. 23, p. 6].

First, to the extent that petitioner seeks appointment of counsel for purposes of his *Davis* claim, such motions are moot. This Court previously appointed the Federal Defender Services of Eastern Tennessee ("FDSET") to represent petitioners in § 2255 proceedings in which FDSET has determined that *Davis* may apply. E.D. Tenn. Standing Order 19-09. Because FDSET has already been appointed to evaluate the merits of petitioner's *Davis* claim, petitioner's request for appointment of counsel for purposes of this claim is **DENIED** as moot.

To the extent that petitioner seeks appointment of counsel for his remaining claims, petitioner does not have a constitutional right to counsel in mounting a collateral attack on his sentence. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Instead, the Criminal

18

Justice Act provides that the Court may appoint counsel to represent a petitioner in a § 2255 proceeding if the Court determines that the interests of justice so require. 18 U.S.C. § 3006A; *see also* 28 U.S.C. § 2255(g) (permitting the court to consider the appointment of counsel in "proceedings brought under this section").

In deciding whether to appoint counsel in a civil case, the Court considers whether exceptional circumstances exist by examining the following factors: (1) "the type of case," (2) the litigant's "abilit[y] to represent himself," and (3) the "complexity of the factual and legal issues involved." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (internal quotations omitted). Generally, this Court does not appoint counsel in a collateral attack upon a conviction or sentence unless it has determined that a hearing on the § 2255 motion is necessary. *Vinson v. United States*, 235 F.2d 120, 122 (6th Cir. 1956); *United States v. Wooden*, No. 1:03-cr-66, 2008 WL 5110790, at *2 (E.D. Tenn. Nov. 26, 2008) (holding that the court "cannot appoint counsel at government expense to provide legal advice and represent [a criminal defendant] prior to the filing of a § 2255 motion").

In this case, the Court has not scheduled an evidentiary hearing, and, as discussed below, the Court does not find that an evidentiary hearing is warranted in this case. *See* Rule 8 of the Rules Governing Section 2255 Proceedings. Moreover, the Court finds that petitioner has not demonstrated exceptional circumstances requiring the appointment of counsel. *See Smith v. United States*, 421 F.2d 1300, 1301 (6th Cir. 1970) (observing that the court assumes an individual "in custody can recall sufficiently

19

the circumstances of a non-frivolous error to frame an appropriate motion to vacate sentence"). Accordingly, petitioner's requests for appointment of counsel are **DENIED**.

### 2. Filing Records Under Seal

Petitioner has also filed a motion to file his mental health records under seal, asking that his sister, who is his power of attorney, be permitted to file the records [Doc. 15]. However, neither petitioner nor his sister have attached any records to the motion for leave to file under seal [*Id.*]. Because petitioner did not file the medical records which he sought to be placed under seal, the Court cannot determine whether petitioner has shown good cause for filing such records under seal. Moreover, as discussed in further detail below, the Court does not find that additional mental health records would be dispositive of any of petitioner's claims. Accordingly, petitioner's request for leave to file records under seal [Doc. 15] is **DENIED**.

### 3. Discovery

Petitioner further filed a motion for discovery, in which he reiterated his claims and requested that discovery be ordered pursuant to Rule 6 of the Rules on Motion Attacking Sentence under Section 2255 [Doc. 20]. A district court may authorize a party in a § 2255 proceeding to conduct discovery under the Federal Rules of Criminal or Civil Procedure if a party requesting discovery shows good cause for the request. Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 6. "Good cause is established where specific allegations show reason to believe that the movant may, if the facts are fully

20

developed, be able to demonstrate entitlement to relief." *Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012) (internal quotation marks and alterations omitted). Here, because there are no specific allegations that provide reason to believe that, with more factual development, petitioner could demonstrate entitlement to relief, petitioner's request for discovery is **DENIED**.

### 4. Evidentiary Hearing

Finally, Petitioner has requested that the Court set an evidentiary hearing in this matter [Doc. 23, p. 1]. An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the petitioner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Because the Court concludes that the record presently before it conclusively shows that petitioner is not entitled to relief under § 2255, petitioner's request for an evidentiary hearing is **DENIED**.

### B. Timeliness

In addressing petitioner's § 2255 motion, the Court first finds it appropriate to address the timeliness of petitioner's claims. Petitioner filed his § 2255 motion on

October 1, 2018 [Doc. 3]. Thereafter, petitioner filed numerous motions explicitly or implicitly attempting to add claims to his § 2255 motion [*See* Docs. 13, 16, 17, 19, 21, 22].

The Antiterrorism and Effective Death Penalty Act ("AEDPA") contains a one-year statute of limitations for the filing of a § 2255 motion. 28 U.S.C. § 2255(f). This one-year limitations period commences on the latest of:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. § 2255(f)(1)-(4). Under § 2255(f)(1), a judgment of conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

Here, the Supreme Court denied petitioner's certiorari petition on October 2, 2017, and thus, under § 2255(f)(1), he had one year from that date, until October 2, 2018, to file

22

his § 2255 motion [Doc. 173]. Petitioner's initial § 2255 motion and memorandum in support [Docs. 3, 4], filed on October 1, 2018, are therefore timely under § 2255(f)(1).[4]

However, the Court still must evaluate the timeliness of petitioner's proposed amendments to his § 2255 motion, all of which were filed outside the one-year limitations period under § 2255(f)(1). A claim raised in an untimely supplemental pleading can be deemed to have been filed on the same date as the initial, timely § 2255 motion if the supplemental claim "relates back" to the original § 2255 motion. Fed. R. Civ. P. 15(c). An untimely amendment or supplement does not "relate back" to the original motion if it raises a new ground for relief involving different facts than those claims raised in the original motion. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Instead, a new claim and the original § 2255 motion must be "tied to a common core of operative facts." *Id*. at 664. The fact that a new claim relates to the same trial, conviction, or sentence as a timely filed claim is insufficient for relation back, as construing Rule 15 in this manner would undermine the purposes of the AEDPA limitations period. *Id*. at 662.

In his initial § 2255 motion, petitioner raised claims that his counsel was ineffective in (1) failing to investigate his mental state and raise an insanity defense; (2) failing to challenge an enhancement under the Sentencing Guidelines relating to use of a dangerous

---

[4] The Court notes that, prior to filing his § 2255 motion, petitioner filed two motions for an extension of time to file his § 2255 motion [Docs 1, 2]. Because petitioner ultimately filed his § 2255 within the statutory limitations period, the Court will **DENY** petitioner's motions for extension of time [Docs. 1, 2] as moot. The Court notes, however, that it is not authorized to grant extensions of the statutory limitations period for § 2255 motions. *See United States v. Asakevich*, 810 F.3d 418, 419 (6th Cir. 2016) (holding that district courts may not pre-approve a grant of equitable tolling, and doing so would amount to an advisory opinion).

weapon; and (3) failing to object to the government's request for an upward departure or variance and/or request a downward departure under U.S.S.G. § 5K2.13, as well as a claim relating to the forcible administration of antipsychotic drugs while he was in pretrial detention [Docs. 3, 3-2, 4]. Additionally, petitioner raised a claim that his appellate counsel was ineffective in failing to raise the dangerous weapon enhancement issue on appeal [Doc. 4, p. 20].

In his later filings, petitioner reiterates and adds detail to these claims, but also asserts the following new claims: (1) the jail conditions while he was in pretrial detention were unconstitutional [Doc. 13, pp. 2–3]; (2) the jailers took things from him and threatened him for asserting his right to trial, and counsel refused to intervene [*Id.* at 3–5]; (3) his counsel distracted him from trial with his religion, by telling him to read Bible verses on counsel's cell phone during trial [*Id.* at 7]; (4) he is entitled to relief in light of *United States v. Davis*, 139 S. Ct. 2319 (2019) [Doc. 16, p. 1; Doc. 17, p. 1; Doc. 19, p. 1]; (5) original statements of witnesses were changed at trial and counsel failed to present witnesses' affidavits [Doc. 17, p. 1; Doc. 19, pp. 2–6]; (6) language in the jury instructions and statutes relevant to his trial are unconstitutionally vague [Doc. 19, p. 6]; (7) evidence introduced at trial "broke the chain of commands" [Doc. 21, p. 7]; (8) he has not received credit for time served on state sentences, which were run concurrently to his federal sentence [*Id.* at 8]; and (9) he was denied admittance to the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP") [Doc. 22, p. 1].

24

The Court finds that none these nine enumerated supplemental claims relate back to petitioner's initial claims, as each of these supplemental claims involves facts that were not part of the initial § 2255 motion. *See Felix*, 545 U.S. at 650. Accordingly, these claims are untimely under § 2255(f)(1) and may only be considered if they are timely under §§ 2255(f)(2), (f)(3), or (f)(4). Section 2255(f)(2) involves situations where the government created an impediment to filing a claim. 28 U.S.C. § 2255(f)(2). Petitioner does not argue that he was prevented from raising these claims within the one-year AEDPA limitations period by some government action, and, thus, § 2255(f)(2) is inapplicable.

Section 2255(f)(3) permits a claim which is based on a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" to be filed within one year of the date of the Supreme Court's decision. 28 U.S.C. § 2255(f)(3). The only claim, untimely under § 2255(f)(1), that is based on a new Supreme Court decision is petitioner's *Davis* claim, which he first raised on August 16, 2019 [Doc. 16]. *Davis* was decided on June 24, 2019. *See Davis*, 139 S. Ct. 2319. Accordingly, petitioner raised this claim within one year of the Supreme Court's decision. However, the inquiry does not end there. The right established by the Supreme Court must have been "made retroactively applicable to cases on collateral review" to invoke § 2255(f)(3). As the Western District of Tennessee recently noted "[n]either the Supreme Court nor the Sixth Circuit has held that the rule announced in *Davis* applies retroactively to cases on collateral review." *Frazier v. United States*, No. 2:19-cv-2254, 2020 WL 6809892, at \*2 (W.D. Tenn. Nov. 19, 2020). Nevertheless, the Western District assumed, for purposes of

25

its analysis, that the rule announced in *Davis* applied retroactively on collateral review. *Id.* Likewise, this Court will assume that the rule announced in *Davis* applies retroactively on collateral review and will deem petitioner's *Davis* claim timely under § 2255(f)(3).

Finally, § 2255(f)(4) relates to claims that, in the exercise of due diligence, could not have been discovered until sometime later, after the petitioner's judgment of conviction became final. 28 U.S.C. § 2255(f)(4). The only remaining supplemental claims that could not have been discovered at or before petitioner's trial are, arguably, his claims that he has not received credit for time served on state sentences and he was denied admittance to the RDAP program. As to the first of these arguments, the Court concludes that petitioner could have discovered the credit for time served on state sentences that was being applied to his federal sentence within the first year of his incarceration, after the judgment of conviction, through the exercise of due diligence. However, petitioner did not raise this claim until July 20, 2020 [Doc. 21, p. 8], several years after the Court imposed sentence on March 11, 2016 [Doc. 123]. Petitioner has not explained why he could not have discovered this claim with the exercise of due diligence within the span of over four years, and the Court finds that petitioner could have discovered this claim with the exercise of due diligence more than a year before he first raised this claim. As to his RDAP claim, petitioner submitted paperwork from the BOP indicating that he was denied admittance to the RDAP program on October 17, 2018 [Doc. 22, p. 7], yet he did not file this claim until July 22, 2020 [Doc. 22], more than a year after the BOP's decision. Accordingly, the Court finds that, with the exercise of due diligence, petitioner could have discovered this claim

26

more than a year prior to his filing of such claim. For these reasons, the Court finds that none of petitioner's supplemental claims are timely under § 2255(f)(4).

Accordingly, for the reasons stated above, the Court finds that, with the exception of his *Davis* claim, petitioner's supplemental claims are untimely under § 2255.[5] Petitioner's motions seeking to supplement his § 2255 motion will therefore be **GRANTED IN PART** and **DENIED IN PART**. Specifically, petitioner's request to add a *Davis* claim to his § 2255 motion will be **GRANTED**. However, petitioner's requests to add additional claims, discussed above, will be **DENIED**.

### C.    Insanity Defense

Petitioner first claims that his trial counsel was ineffective in failing to investigate his mental state and raise an insanity defense at trial [Doc. 3, p. 6]. Specifically, petitioner states that his counsel failed to conduct an investigation as to his mental health history and failed to request a psychiatrist to conduct an examination, evaluation, preparation, and presentation of defense [Doc. 3-2, p. 18]. Petitioner also contends that counsel was ineffective in failing to present an insanity defense, which petitioner states was his only viable defense [*Id*. at 21–22]. Petitioner states that, because counsel did not present the insanity defense, he "led Hayworth into a trial with no defense at all" [*Id*. at 16]. Petitioner

---

[5] The Court notes that the AEDPA's one-year limitations period is not jurisdictional, and therefore, a petitioner may still maintain an untimely § 2255 motion if he shows that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). However, in this case, petitioner does not argue that he is entitled to equitable tolling, nor does he provide any reasons that would warrant the grant of equitable tolling as to his untimely supplemental claims. Accordingly, the Court finds that equitable tolling does not save petitioner's untimely supplemental claims from dismissal.

contends that, had counsel raised the insanity defense, no reasonable jury would have found him guilty [*Id*. at 16–17].

The government responds that petitioner's counsel was not ineffective in failing to raise an insanity defense, because such defense would have been incompatible with the facts of the case [Doc. 11, p. 4]. Specifically, the government argues that there was ample evidence that petitioner could appreciate the nature and wrongfulness of his acts, which precluded an insanity defense [*Id*.]. Additionally, the government contends that an insanity defense would have been incompatible with petitioner's own sworn testimony that he was innocent [*Id*. at 5].

Under *Strickland*, with regard to counsel's duty to investigate, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" and "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. To succeed on an insanity defense, a defendant must prove by clear and convincing evidence that "at the time of the commission of the acts constituting the offense," he, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. Further, to succeed on such a defense, a defendant must admit to committing the criminal conduct. *Kissner v. Palmer*, 826 F.3d 898, 903 (6th Cir. 2016). The Sixth Circuit has noted that a defendant who asserts that he is actually innocent cannot, therefore, show that counsel was ineffective in failing to raise the insanity defense. *Id*.

28

Here, petitioner cannot meet his burden of showing that counsel performed deficiently in his strategic decision not to pursue an insanity defense. At trial, petitioner himself testified that he was innocent of any involvement in the robbery or carjacking [Crim. Case, Doc. 152, pp. 9–16]. Given petitioner's testimony that he was innocent, counsel could not reasonably have pursued an insanity defense, which would have required petitioner to admit his involvement in the offense. Thus, even if counsel did not conduct a full investigation into petitioner's mental state at the time of the offense, counsel's strategic choice not to pursue an insanity defense in light of petitioner's claims of innocence was reasonable.

As to prejudice, the Supreme Court has held that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In denying habeas relief under 28 U.S.C. § 2254, the Sixth Circuit has held that a habeas petitioner failed to show prejudice from counsel's failure to raise an insanity defense when the petitioner told police that he "was sorry the man got shot," which the Sixth Circuit held "indicates that Petitioner could appreciate the wrongfulness of his conduct" and thus "[t]his statement alone could have undermined any claim of legal insanity." *Brown v. McKee*, 460 F. App'x 567, 581 (6th Cir. 2012).

Here, there was significant evidence at trial that would indicate that petitioner could appreciate the nature and wrongfulness of his acts at the time that he committed the offense.

29

The evidence included that petitioner covered his face to avoid identification [Crim. Case, Doc. 150, pp. 55, 65, 69], staged a fight with his accomplice to draw suspicion away from the accomplice [*Id*. at 55–56; Crim. Case, Doc. 151, p. 42], fled from the police after the robbery [Crim. Case, Doc. 150, pp. 87–88], committed a carjacking to continue his flight from police [Crim. Case Doc. 151, pp. 121–27, 151–57], attempted to break into a home to hide from police [*Id*. at 142], and hid under a couch in an abandoned home to avoid police [*Id*. at 147–48]. Given this evidence, the Court does not find a substantial likelihood that petitioner would have succeeded in an insanity defense, even if he had not testified to his innocence, which, as noted above, would have completely undermined such defense. Accordingly, the Court finds that petitioner has not met his burden of establishing prejudice under *Strickland* as to this claim and this claim will be **DENIED**.

### D. Forcible Medication

Petitioner next claims that he was forcibly administered the antipsychotic drug Haldol while in pretrial detention [Doc. 3-2, p. 6]. Petitioner contends that these "actions . . . [a]ffected the outcome of the proceeding as well as the defendant[']s health" [*Id*.]. Petitioner contends that, while in the Blount County Jail pending trial, he was "strapped in a chair and forcefully administered Haldol, the most powerful [antipsychotic] drug that exist[s]" against his will and without a hearing [Doc. 13, p. 3]. Petitioner further contends that the jailers took away his mat, clothing, and food and refused to let his mother visit him because he refused to sign a consent to be medicated [*Id*. at 3–4]. Petitioner states that he informed his counsel about the forced medication and that he thought that "whatever

30

was shot in [him] was messing with [his] mind" [*Id*. at 5]. However, counsel told him that the medication issue was out of his control and he could not do anything to help [*Id*.]. Petitioner claims that this forced medication caused the communication difficulties with his counsel at trial [*Id*. at 6].

Ultimately, the Court concludes that this claim is not cognizable in a § 2255 motion. Section 2255 is intended to provide relief from an unconstitutional or otherwise unlawful sentence, and challenges to unconstitutional conditions of prison life are properly brought under civil rights actions instead. *Gross v. United States*, Nos. CR.A. 02-80163; Civ.A. 03-70710, 2003 WL 21816984, at *3 (E.D. Mich. July 23, 2003). While constitutional rights may be implicated in the forced administration of antipsychotic drugs, depending on the circumstances, *see Sell v. United States*, 539 U.S. 166 (2003), petitioner's claim of forced administration of antipsychotic drugs, standing alone, is not a challenge to his conviction or sentence, such that it would be an appropriate claim for relief under § 2255. Moreover, to the extent that petitioner seeks to raise a claim that his counsel was ineffective in failing to intervene in the forced medication taking place at the Blount County Jail, such claim would still not implicate petitioner's conviction or sentence. Finally, to the extent that petitioner claims that the administration of drugs caused communication difficulties with his counsel [Doc. 13, p. 6], and "[a]ffected the outcome of the proceeding" [Doc. 3-2, p. 6], as explained in further detail below, such allegations are too conclusory to support a claim under § 2255. Accordingly, this claim will be **DENIED**.

31

### E. Communication During Trial

Petitioner additionally argues that his counsel failed to address mental health issues that arose during the trial, specifically, communication difficulties that arose [Doc. 3-2, p. 7]. He argues that this resulted in an "unfair trial" [*Id*.]. In a later filing, petitioner contends that both he and counsel informed the Court of their communication issues, but the Court erroneously continued the trial [Doc. 4, p. 15]. Petitioner contends that the Court should have ordered a recess to "evaluate the nature of the effect of this by having a hearing," allowing petitioner to speak to a psychiatrist, or declaring a mistrial [*Id*.]. Petitioner states that his counsel informed the Court that the communication issue could be worked through, and therefore, the Court allowed the proceedings to continue [*Id*.].

First, to the extent that petitioner argues that the Court erred in allowing his trial to continue after communication difficulties were mentioned, the Court reasonably relied on both defense counsel and petitioner's representations that the communication difficulties they were experiencing could be resolved. Specifically, counsel stated that, although there were disagreements, he had been able to clearly communicate his trial strategy to petitioner during a recess from trial, taken for that purpose [Crim. Case, Doc. 151, pp. 65–66]. When given the opportunity to address the Court, petitioner stated that he had nothing to add to his counsel's statement [*Id*. at 66]. Accordingly, to the extent that petitioner now contends that the Court erred in not continuing the trial or declaring a mistrial on this ground, the Court had no reason to believe that such action was appropriate given the representations made by both defense counsel and petitioner himself.

Second, to the extent that petitioner contends that his counsel was ineffective in representing that he could work through his communication difficulties with petitioner and/or failing to request that the Court pause the trial or declare a mistrial, petitioner has not met his burden of establishing that counsel performed deficiently or that he was prejudiced by any deficient performance. Petitioner repeatedly states that he had communication difficulties with counsel at trial, but never provides any explanation for what these communication difficulties were or how they impacted his trial. Petitioner does not state that he tried to communicate some issue to counsel, which counsel was unable to understand, nor does he assert that he could not understand counsel's communication of defense strategy. Given this limited information, the Court cannot find that counsel should have sought a trial continuance or mistrial based on communication difficulties, nor can the Court find that, had counsel done so, there is a substantial likelihood that the outcome of the trial would have been different. Accordingly, this claim is **DENIED**.

### F.     Dangerous Weapon Sentencing Enhancement

Petitioner also claims that his counsel was ineffective in failing to challenge a sentencing enhancement he received based on uncharged conduct [Doc. 3, p. 6]. Specifically, petitioner contends that he received a sentencing enhancement under U.S.S.G. § 2B3.1, but counsel failed "to object, litigate and put forth any challenge to the enhancement" [Doc. 4, p. 17]. Petitioner contends that the Sentencing Commission's intent with this enhancement related to the use of a firearm, but he was not charged with an offense involving a firearm [*Id.*]. Further, petitioner argues that a toy or "BB" gun cannot

33

be considered a firearm under the guideline enhancement, and his counsel was deficient in failure to challenge a toy or "BB" gun being used for the enhancement [*Id*. at 17–18]. Moreover, petitioner contends that, because the actions used to enhance his sentence under this section were uncharged conduct, it could not be used because the presumption of innocence applied [*Id*. at 19]. Petitioner further contends that appellate counsel was ineffective in failing to raise this issue [*Id*. at 17, 20].

The government responds that petitioner's counsel did object to the dangerous weapon enhancement [Doc. 11, p. 7]. The government also contends that the plain language of the Guidelines clearly includes a toy or replica gun as a "dangerous weapon" [*Id*.]. Additionally, the government argues that a sentencing court can consider uncharged conduct if proven by a preponderance of the evidence, as long as the ultimate sentence falls within the range prescribed by law for the crime of conviction [*Id*. at 8]. Further, the government states that facts merely used to influence judicial discretion, such as those used to calculate the advisory sentencing guideline range, need not be found by a jury [*Id*. at 9].

Petitioner's claim that his trial counsel was ineffective in failing to challenge the dangerous weapon enhancement is belied by the record. The record shows that counsel objected to the imposition of a five-level enhancement for brandishing a firearm, arguing that the "toy" or "BB" gun that petitioner brandished did not qualify as a firearm under the Guidelines [Crim. Case, Doc. 105]. Based on this objection, the probation office initial reduced the enhancement to a three-level enhancement for brandishing a "dangerous weapon" [Crim. Case, Doc. 108, pp. 1–2, Doc. 109 ¶ 25]. Thereafter, the probation office

revised its recommendation to a four-level enhancement for "otherwise using" a dangerous weapon [Crim. Case, Doc. 111, Doc. 112 ¶ 25]. Defense counsel again objected to this four-level enhancement, arguing that it was too vague [Crim. Case, Doc. 118, Doc. 149, pp. 6–8]. The Court ultimately rejected this objection and applied the four-level enhancement [Crim. Case Doc. 149, pp. 27–29]. Despite the Court's ultimate ruling on the issue, petitioner's counsel thoroughly argued the matter, both in written briefing and at the sentencing hearing. Trial counsel could not have acted ineffectively in doing precisely what petitioner now argues that counsel should have done.

As to petitioner's claim that his appellate counsel should have raised this issue on appeal, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Regardless of whether petitioner's appellate counsel should have included argument regarding the alleged vagueness of the dangerous weapon enhancement on appeal, petitioner suffered no prejudice. The Sixth Circuit issued its opinion affirming petitioner's convictions and sentences on March 8, 2017 [Crim. Case, Doc. 163]. Two days prior to the issuance of that opinion, the Supreme Court specifically held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause[.]" *Beckles v. United States*, 137 S. Ct. 886, 895 (2017). In light of the Supreme Court's decision in *Beckles*, any argument that the "otherwise used" language in the Guidelines was unconstitutionally vague would have been foreclosed at the

time that the Sixth Circuit issued its opinion. Accordingly, petitioner suffered no prejudice as a result of appellate counsel's failure to raise this issue on appeal.

To the extent that petitioner argues that his counsel should have raised an argument that this enhancement was based on uncharged conduct, counsel was not ineffective because such argument is, and was at the time, foreclosed by case law. The Sixth Circuit has held that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008). While facts that increase mandatory minimum sentences must be submitted to a jury, facts that merely "influence[] judicial discretion" need not be found by a jury. *Alleyne v. United States*, 570 U.S. 99, 116 (2013). The exercise of judicial discretion in selecting a sentence within the statutory limits "does not contravene the Sixth Amendment even if it is informed by judge-found facts." *Dillon v. United States*, 560 U.S. 817, 828–29 (2010) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000)). Thus, because the Court was permitted to consider uncharged, or even acquitted conduct, in selecting a sentence within the statutory limits, petitioner's counsel did not perform deficiently in failing to object to the consideration of uncharged conduct in applying this sentencing enhancement. Accordingly, petitioner has not met his burden of establishing that counsel was ineffective and this claim will be **DENIED**.

36

### G. Upward Variance

Next, petitioner contends that his trial counsel was ineffective in failing to object to the government's request for an upward departure or variance [Doc. 3-2, p. 6]. Petitioner contends that this failure resulted in an "unjustified upward variance" [*Id.*]. Petitioner contends that counsel should have requested a downward departure under U.S.S.G. § 5K2.13 for diminished capacity, and, due to counsel's failure to make this request, petitioner received an upward variance [Doc. 4, pp. 15–16].

To the extent that petitioner claims that his counsel failed to oppose the government's request for an upward departure or variance, this claim is belied by the record. At the sentencing hearing, petitioner's counsel argued extensively in opposition to the government's request for an upward departure or variance [Crim. Case, Doc. 149 pp. 45–52]. Moreover, to the extent that petitioner claims that his counsel's failure in opposing the government's request resulted in an "unjustified" upward variance, the Sixth Circuit has already rejected this argument by upholding the upward variance on direct appeal [Crim. Case, Doc. 163, p. 11]. Petitioner cannot raise this issue again in his § 2255 motion under the guise of an ineffective assistance of counsel claim. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances").

Additionally, to the extent that petitioner claims that his trial counsel was ineffective in failing to move for a downward departure under U.S.S.G. § 5K2.13, based on diminished capacity, the Court notes that the plain language of that guideline section precludes a

37

downward departure based on diminished capacity if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13. Because petitioner's offenses clearly involved both actual violence and a serious threat of violence (e.g., brandishing a dangerous weapon, hitting an accomplice over the head with the dangerous weapon, wrestling a pregnant woman to the ground for her keys), petitioner's counsel did not perform deficiently in failing to argue for a downward departure that would have been foreclosed based on the facts of the case and the plain language of the guideline section. Moreover, petitioner suffered no prejudice as, given the violent nature of the offenses, which the Court emphasized in granting the government's motion for an upward variance [Crim. Case, Doc. 149, pp. 75–76], the Court would not have granted any request for a downward departure under § 5K2.13. Accordingly, petitioner has not shown that his counsel was ineffective in this regard, and this claim will be **DENIED**.

### H. *Davis*

Petitioner initially requested that the Court review his case in light of *Davis* and did not offer any further argument as to how *Davis* applies to his case [Doc. 16, p. 1; Doc. 17, p. 1]. However, in a later filing, petitioner argued that *Davis* "appl[ies] to anyone serving an unconstitutional sentence" and he "ha[s] enhancements that are vague and [his] crimes are no longer violent" [Doc. 19, p. 1].

In *Davis*, the Supreme Court struck down as unconstitutionally vague the residual clause of 18 U.S.C. § 924(c)(3), which defined a "crime of violence" in part as a felony

"that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 139 S. Ct. 2319, 2324, 2336 (quoting 18 U.S.C. § 924(c)(3)). Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of such crime, possesses a firearm" is subject to additional penalties in addition to the sentence for the underlying crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). In light of *Davis*, such additional penalties may only apply, in the case of an underlying crime of violence, rather than a drug trafficking offense, if the offense qualifies as a "crime of violence" under § 924(c)(3)'s element's clause.

Petitioner here was not convicted of an offense under § 924(c). Accordingly, *Davis* has no impact on his convictions and sentences. To the extent that petitioner attempts to challenge a career-offender enhanced sentence in light of *Davis*, the Court notes that, while the PSR initially deemed petitioner a career offender [Crim. Case, Doc. 100 ¶¶ 41, 50, 51, 57], the government asked that petitioner not be sentenced as a career offender [Crim. Case, Doc. 115, p. 5; Doc. 149, pp. 24–25], and the Court sustained petitioner's objection to his classification as a career offender [Crim. Case, Doc. 149, p. 38]. Accordingly, petitioner was not sentenced as a career offender under the Sentencing Guidelines, and, even to the extent that petitioner could argue that *Davis* impacted the career offender guideline, *Davis* is still inapplicable in this case.

39

Finally, to the extent that petitioner asserts that his sentencing enhancement for "otherwise us[ing]" a dangerous weapon is unconstitutionally vague in light of *Davis*, such argument is foreclosed. After a challenge to the career offender guidelines' residual clause, based on *Johnson*'s elimination of the ACCA's similarly worded residual clause, the Supreme Court specifically held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause[.]" *Beckles*, 137 S. Ct. at 895. Thus, petitioner's guideline enhancement for otherwise us[ing]" a dangerous weapon cannot be unconstitutionally vague. Accordingly, petitioner's claim for relief in light of *Davis* is **DENIED**.

## I. Remaining Motions

Petitioner has filed two motions to compel the Court to issue a ruling on his § 2255 motion, which he filed a mere 5 days apart [Docs. 24, 25]. Petitioner contends that his § 2255 motion has "laid dormant without just cause for 2 years" [Doc. 24, p. 2]. While true that petitioner filed his initial § 2255 motion on October 1, 2018 [Doc. 3], and the government responded on March 11, 2019 [Doc. 11], Petitioner continuously filed motions attempting to supplement his petition, request discovery, request an evidentiary hearing, etc., with the most recent motion, prior to his filing of his motions to compel, being a mere month prior to the first motion to compel [*See* Doc. 23]. As evidenced by the exhaustive nature of this memorandum opinion, petitioner's continuous filing of motions and attempts to amend his § 2255 required the Court to reevaluate petitioner's case with every newly filed motion thus resulting in the very delays of which Petitioner now complains.

40

Regardless, because the Court now issued its order denying petitioner's § 2255 motion, his motions to compel judgment [Docs. 24, 25] are **DENIED** as moot.

Further, petitioner has filed a motion for the Court to approve his release plan [Doc. 27]. Because the Court has now issued its order denying petitioner's § 2255 motion, petitioner's motion for the Court to approve his release plan [Doc. 27] is **DENIED** as moot.

## IV. Conclusion

For these reasons, the Court will **DENY** petitioner's motions for an extension of time to file his § 2255 motion [Docs. 1, 2; Crim. Case, Docs. 179, 180] as moot. The Court will **DENY** petitioner's requests for appointment of counsel [Docs. 16, 17, 19, 22, 23], leave to file medical records under seal [Doc. 15], discovery [Doc. 20], and an evidentiary hearing [Doc. 23]. The Court will **GRANT IN PART** and **DENY IN PART** petitioner's requests to supplement his initial § 2255 motion [Docs. 13, 14, 16, 17, 19, 22]. Specifically, petitioner's requests to supplement will be **GRANTED IN PART** only to the extent that the Court will consider petitioner's supplemental *United States v. Davis*, 139 S. Ct. 2319 (2019) claim as timely. Nevertheless, because petitioner has not shown that he is entitled to relief, the Court will **DENY** petitioner's § 2255 motion [Doc. 3; Crim. Case, Doc. 181]. In light of this ruling on petitioner's § 2255 motion, the Court will **DENY** petitioner's motions to compel judgment [Docs. 24, 25] and petitioner's motion to approve release plan [Doc. 27] as moot.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner

41

leave to proceed *in forma pauperis* on appeal.  *See* Fed. R. App. P. 24.  Petitioner having

failed to make a substantial showing of the denial of a constitutional right, a certificate of

appealability **SHALL NOT ISSUE.**  28 U.S.C. § 2253; Fed. R. App. P.  22(b).  A separate

judgment will enter.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE